UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:10CV47

| | |
|---|---|
| ANIBAL RUBIO SERRANO, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>RENOICE E. STANCIL, *Administrator,* )<br>*Bertie Correctional Institution* )<br>)<br>Respondent. )<br>_____) | **O R D E R** |

**THIS MATTER** comes before the Court upon Petitioner's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. No. 1); Respondent's Response and Motion for Summary Judgment (Doc. Nos. 9, 10); Petitioner's Opposition (Doc. No. 12); and Respondent's Reply (Doc. No. 14).

**I.     Factual Summary**

At his November 2, 2006 plea hearing, the petitioner stipulated to the following factual basis for his guilty plea. (Doc. No. 10-3 at 8: Transcript of Plea Hearing).  On September 19, 2000, while spending the night with a friend, Petitioner molested his friend's twelve year-old son.  Specifically, Petitioner fondled the boy's penis, and while holding the boy down, Petitioner anally sodomized the boy for approximately two minutes.  On the day of the incident, Petitioner had assault on a female charges pending in Wilkes County.  Analysis of DNA from rectal swabs done on the boy, and from cuttings done on his underwear, established that the DNA matched a known sample from Petitioner.  Petitioner later made a statement indicating he was responsible but did not elaborate.  (Id. at 12).  Petitioner was indicted on October 30, 2000 but missed his

initial appearance the following week. (Id. at 12). He was later found to be living in France and was extradited to North Carolina in 2005. (Id. at 13).

## II. Procedural History

On November 2, 2006, Petitioner pled guilty, pursuant to a plea arrangement negotiated between his counsel and the prosecutor, to second-degree sex offense, two counts of indecent liberties, and second-degree kidnapping in the Iredell County Superior Court. (Doc. No. 10-2: Plea Form). During his plea hearing, Petitioner swore to the existence of two aggravating sentencing factors: that he took advantage of a position of trust or confidence and was on pretrial release at the time of the offenses to which he pled guilty. (Doc. No. 10-2; 10-3 at 7). Pursuant to his plea arrangement, Petitioner agreed to the following specific aggravated sentences: 120 to 153 months for the sex offense conviction, a consecutive sentence of 24 to 29 months for one count of indecent liberties, and a consecutive sentence of 36 to 53 months for the kidnapping conviction, which was suspended and for which he received probation. (Doc. No. 10-2 at 4). The plea arrangement further specified that the State agreed to have the trial court arrest judgment on one count of indecent liberties. (Id.) Judge Collier accepted the plea and sentenced Petitioner as requested in the plea arrangement. (Doc. No. 10-3 at 15-17; Doc. No. 10-4).

Petitioner did not file a direct appeal. (Doc. No. 1 ¶ 8: Petition). On October 23, 2007, Petitioner filed a Motion for Appropriate Relief ("MAR") and supporting affidavit. (Doc. No. 10-5 at 2: Exhibit Copy of MAR and Doc. No. 14-2 at 3: Exhibit of MAR).[1] On April 28, 2009,

---

[1] The State contends that the MAR that Petitioner attached as an exhibit to his habeas petition, which is dated October 23, 2007, is different from the MAR that the Assistant Attorney General obtained from the Clerk of the Iredell County, which was dated October 31, 2007, and was the only MAR in the state court file. Petitioner did not respond to the claim that the MAR he attached to his habeas petition and the MAR he filed in the state court were different.

the State filed its response in opposition to the MAR. (Doc. No. 10-6). In an Order dated May 7, 2009, Judge Collier denied Petitioner's MAR, finding that Petitioner had "presented nothing in support of his motion other than his own speculative, self-serving and unsubstantiated allegations," and has "asserted no grounds, either in law or in equity, upon which his requested relief should be granted." (Doc No. 10-7 at 2: Order denying MAR).

On March 16, 2010, Petitioner filed for writ of certiorari in the North Carolina Court of Appeals (Doc. No. 10-8), which was denied on April 5, 2010. (Doc. No. 10-10). On April 8, 2010, Petitioner submitted the instant 28 U.S.C. § 2254 petition alleging: (1) that he received ineffective assistance of counsel; (2) that his due process rights were violated because he did not receive all the jail-time credit to which he was entitled; (3) that his sentence was aggravated based on findings of fact by the trial judge, not a jury, in violation of Blakely v. Washington, 542 U.S. 296 (2004); and (4) that his due process rights were violated when the trial court ordered that he serve consecutive sentences. (Doc. No. 1).

## III. STANDARD OF REVIEW

### A. Summary Judgment Standard

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inco., 477 U.S. 242, 248-49 (1986).

## B. Section 2254 Standard

In addition to the motion for summary judgment standard set forth above, this Court must also consider the Petition for Writ of Habeas Corpus under the requirements set forth in 28 U.S.C. § 2254. Section 2254(d) sets forth:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A claim is considered "adjudicated on the merits" when it was "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999). A state court adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (quoting Williams, 529 U.S. at 410). Therefore, this Court may not issue the writ even if it concludes in its independent review that the state court made an incorrect or erroneous application of the correct federal principles. See Willaims, 529 U.S. at 412. Rather, this Court must establish that the state court ruling was both incorrect and objectively unreasonable in order to grant relief. See

4

McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004). When examining whether a state court's judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), a reviewing court must be mindful that a "determination of a factual issue made by a State court shall be presumed to be correct" unless a petitioner rebuts this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

This standard of review is "quite deferential to the rulings of the state court." Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001). This deference extends to summary dismissals. See Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000). A habeas petitioner bears the burden of establishing his claim. Woodford v. Visciotti, 537 U.S. 19, 25 (2002). In contrast, if a petitioner has properly presented a claim to the state court, but the state court has not adjudicated the claim on the merits, a federal court reviews questions of law and mixed questions of law and fact *de novo*. Weeks v. Angelone, 176 F.3d 249, 258 (4th Cir. 1999), aff'd, 528 U.S. 225 (2000).

## IV. ANALYSIS

### A. Ineffective Assistance of Counsel

Petitioner alleges that his trial counsel was ineffective because he should have looked more closely into the details of the charges against him and the discovery materials provided by the State, and should have challenged certain errors.

Ineffective assistance of counsel claims are governed by Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In Strickland, the Supreme Court held that in order to succeed on an ineffective assistance of counsel claim, a petitioner must establish that counsel's performance was constitutionally defective to the extent it fell below an objective standard of reasonableness and that Petitioner was prejudiced thereby – that is, there is a reasonable probability that but for

5

the error, the outcome would have been different. Id. at 690-94. There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689. Moreover, a petitioner bears the burden of proving Strickland prejudice; if a petitioner fails to meet this burden, then a "reviewing court need not consider the performance prong." Fields v. Attorney General of Md., 956 F.2d 1290, 1297 (4th Cir. 1992). In a case involving a guilty plea, no prejudice exists unless the petitioner can demonstrate that "but for the assertedly ineffective assistance, a reasonable defendant would have insisted on proceeding to trial." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). When there is an allegation that counsel was ineffective at sentencing, a petitioner must show that his "sentence would have been more lenient" absent counsel's errors in order to establish prejudice. Royal v. Taylor, 188 F.3d 239, 248-49 (4th Cir. 1999).

Taking Petitioner's claims out of order, this Court first addresses Petitioner's contention that his counsel was ineffective because the plea agreement that his counsel presented to him was not the same one to which he pled guilty, and also that his counsel told him to say "yes" in court to the judge's questions, which suggests that his guilty plea was invalid and not voluntary.

There is no evidence that the agreement counsel discussed with Petitioner and the one to which he pled guilty were different. The Transcript of Plea form is a four-page document that memorialized the trial court's plea colloquy with Petitioner. (Doc. No. 10-2). The first two pages of that form contain the trial court's questions and Petitioner's answers establishing his ability to enter his plea, his understanding of the proceeding, and his various rights. Page two contains a section entitled "acknowledgment by defendant," which states that Petitioner has "read or heard all of the court's questions and understood them. The answers shown are the ones [he] gave in open court and they are true and accurate. No one [] told [him] to give false

6

answers in order to have the court accept [his] plea in this case. The terms and conditions of the plea as stated within the transcript, if any, are accurate." (Doc. No. 10-2 at 2-3). The third page, which Petitioner argues was blank when he signed it, contains the terms of the plea. Petitioner's initials appear under the terms as listed. Moreover, one of the terms was changed, and a handwritten correction was included; notably, Petitioner's initials appear next to the crossed-out term with the new term handwritten in. (Doc. No. 10-2 at 4). Because the record of the stenographic transcript of the plea proceedings reflects that Petitioner was apprised of the terms and also of the specific change in one of the terms, he cannot demonstrate any prejudice on the basis of his allegation that counsel was ineffective because the plea agreement that counsel presented to him was not the same one to which he pled guilty. Petitioner's conclusory allegation is without evidentiary support and is in conflict with the plea agreement form that he initialed as well as with the stenographic transcript of his plea hearing. Further, Petitioner's assertion is insufficient to breach the formidable barrier of <u>Blackledge v. Allison</u>, 431 U.S. 63 (1977) (defendants sworn statements constitute a formidable barrier in subsequent collateral proceedings).

Next, to the extent Petitioner challenges the voluntariness of his plea by alleging that his counsel told him to say "yes" to all the court's questions or there would be no plea agreement, the record of Petitioner's sworn statements at his plea hearing belies this claim.[2] At his plea hearing, Petitioner swore that he understood the rights he was waiving; that he was indeed guilty; that he was not induced into pleading guilty; that he pled guilty by his own free will, fully

---

[2] Petitioner's education level also belies his claim. According to the transcript of plea form and Petitioner's filings in state court, Petitioner completed high school, attended college, received multiple masters degrees, and taught at the college level. (Doc. No. 10-3 at 4, 10-5 at ¶¶ 3-5 and 27).

7

understanding what he was doing; and that he did not have any questions concerning his case. (Doc. No. 10-3 at 3-5). Petitioner indicated that he understood that he was pleading guilty to second-degree sex offense, two counts of indecent liberties, and second-degree kidnapping. He further indicated that he agreed to plead guilty pursuant to a plea agreement; that his plea agreement was his full and correct plea arrangement; that he accepted this plea agreement; and that, other than the plea, no one made any promises or threatened him in any way to cause him to enter the plea against his wishes. (Id. at 5-6). Petitioner swore that his attorney explained the nature of the charges against him, that he understood the charges and that he also understood the elements of the charges. He also stated that he and his lawyer discussed possible defenses and that he was satisfied with the services of his attorney. (Id. at 4). The Court explained the penalties Petitioner faced on the charges pursuant to the plea agreement. (Id. at 5). Finally, the Court asked Petitioner if the plea arrangement the Court described was correct as being Petitioner's full plea arrangement and whether Petitioner personally accepted the plea arrangement, to which Petitioner responded "yes" to both questions. (Id. at 6). The trial court determined that there was a factual basis for the entry of Petitioner's plea and that Petitioner was competent to enter his plea and "that his plea was his informed choice, made freely and voluntarily and understandably." (Id. at 15).

"[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity,'" United States v. White, 366 F.3d 291, 295 (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977), because courts must be able to rely on the defendants statements made under oath during a properly conducted plea colloquy. United States v. Bowman, 348 F.3d 408, 417 (4th Cir. 2003). Because these statements do carry such a presumption, they present a "formidable barrier in any subsequent collateral proceeding."

8

Blackledge, 431 U.S. at 74. The transcript of Petitioner's plea hearing makes clear that the Court conducted a proper guilty plea hearing concluding that Petitioner entered a knowing and voluntary guilty plea. Boykin v. Alabama, 395 U.S. 238 (1969) (noting requirements for valid guilty plea). Further, absent compelling circumstances not shown here, Petitioner's solemn in-court representations, as reflected in the transcript of the plea proceedings, are deemed conclusive. See Via v. Superintendent, Powhatam Correctional Center, 643 F.2d 167, 171 (4th Cir. 1981).

Petitioner received a generous plea arrangement. Petitioner received sentences totaling a maximum term of 182 months imprisonment, plus a suspended sentence for which he received supervised probation. (Doc. No. 10-2 at 4). Without the plea arrangement, Petitioner could have received 418 months imprisonment.[3] (Id.)

Petitioner has not established either prong of the Strickland test as is required to establish an ineffective assistance of counsel claim and the record supports that Petitioner's plea was a knowing and voluntary guilty plea. Further, the MAR court's adjudication of Petitioner's claim was correct. It is not contrary to, nor does it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, i.e. Boykin and Strickland. Nor is it based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. Therefore, Petitioner's claim will be denied.

Next, Petitioner alleges that his counsel was ineffective for failing to file a speedy trial motion and for failing to file various pretrial motions. This claim was rejected by the MAR

---

[3] The Court excluded 59 months from the calculation of Petitioner's maximum possible sentence to account for the fact that the trial court arrested judgment on one count of indecent liberties, as it was the predicate offense of the kidnapping conviction. (Doc. No. 10-2 at 4).

court's summary order of dismissal. Therefore, the claim was adjudicated on the merits, and the State court's decision is entitled to great deference so long as it does not run afoul of § 2254(d) or (e).

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects[.]" United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). That is, "a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offenses with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973); see also McMann v. Richardson, 397 U.S. 759, 767-70 (1970) (holding that a knowing, voluntary, counseled guilty plea is not subject to challenge on collateral review even if motivated by existence of a coerced confession); see also Hall v. McKenzie, 575 F.2d 481, 484 (4th Cir. 1978) (finding that a guilty plea entered in state court foreclosed defendant's right to challenge in a habeas proceeding the constitutionality of a hearing held before entering that plea). Petitioner's challenges in this claim relate to events that occurred before he entered his guilty plea, which this Court has determined was a knowing, voluntary and counseled guilty plea, therefore Petitioner's guilty plea stands as a bar to his ability to challenge his counsel's decision not to file various pretrial motions.

Next, Petitioner argues that his counsel was ineffective for failing to challenge his sentence for a variety of reasons, including the imposition of a sentence in the aggravated range in violation of Blakely v. Washington, 542 U.S. 296 (2004). Petitioner's plea agreement specified the precise contours of his sentence, and Petitioner swore that the plea agreement as stated on his Transcript of Plea form was his complete and correct agreement with the State.

(Doc. No. 10-2 at 3). Petitioner admitted and stipulated to two aggravating factors: 1) that he took advantage of a position of trust or confidence, and 2) that he committed the offense to which he pled guilty while on pretrial release from other charges. (Doc. No. 10-3 at 7). The trial court sentenced Petitioner to the exact sentence specified in the plea agreement to which Petitioner agreed. (Doc. No. 10-3 at 16-17). Had counsel objected to the sentence, the trial court would have denied the objection based on Petitioner's stipulation to the aggravating factors in the plea agreement. Thus, Petitioner has not shown either deficiency or prejudice in this regards, and so his claim must fail.

Next, Petitioner argues that his counsel was ineffective because he should have filed an appeal based on Petitioner receiving consecutive and aggravated sentences and he failed to "instruct [Petitioner] of his statutory rights to appeal as it is established in the NC General Statutes." (Doc. No. 1-1 at 11). This argument is without merit because Petitioner had no right to appeal, given his plea agreement. Under N.C.G.S. § 15A-1444, when a North Carolina defendant pleads guilty, he may appeal only the following issues:

> (1) whether the sentence is supported by the evidence (if the minimum term of imprisonment does not fall within the presumptive range); (2) whether the sentence results from an incorrect finding of the defendant's prior record level under N.C. Gen. Stat. § 15A-1340.14 or the defendant's prior conviction level under N.C. Gen. Stat. § 15A-1340.21; (3) whether the sentence constitutes a type of sentence not authorized by N.C. Gen. Stat. § 15A-1340.17 or § 15A-1340.23 for the defendant's class of offense and prior record or conviction level; (4) whether the trial court improperly denied the defendant's motion to suppress; and 5) whether the trial court improperly denied the defendant's motion to withdraw his guilty plea.

State v. Carter, 167 N.C. App. 582, 584 (2004), citing N.C.G.S. § 15A-1444 (2003). Petitioner's claim does not fall within this list.

In Frazer v. South Carolina, 430 F.3d 696 (4th Cir. 2005), the Fourth Circuit Court of

Appeals examined counsel's duty regarding a defendant's right to appeal in light of the United States Supreme Court's decision in Roe v. Flores-Ortega, 528 U.S. 470 (2000). In Frazer, the Fourth Circuit noted:

> Where, as here, the defendant has not specifically requested an appeal, counsel is under a professional obligation to "consult" with the defendant regarding that fundamental decision, unless the circumstances demonstrate that consultation is unnecessary. Flores-Ortega, 528 U.S at 478-79. If counsel fails to consult, the defendant may demonstrate prejudice by showing that a rational defendant would want to appeal. The defendant may do this by demonstrating either that a) there were non-frivolous issues for appeal, or b) he had adequately indicated his interest in appealing. Id. at 480. The mere presence of non-frivolous issues to appeal is generally sufficient to satisfy the defendant's burden to show prejudice. Id. at 486. Attempting to demonstrate prejudice based on a reasonably obvious interest in pursuing an appeal, however, necessitates an additional showing "that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." Id.
> . . .
> . . . Flores-Ortega does, however, illustrate that when there are non-frivolous issues to appeal or the defendant has manifested an interest in appealing, Strickland requires that counsel consult with the defendant in deciding whether to go forward. Flores-Ortega, 528 U.S. at 478-799. Significantly, this duty applies even if the defendant had pled guilty. Although there may be fewer issues to appeal under such circumstances, so long as the defendant retains an appeal of right, counsel's obligation remains the same. See id. at 480.

Frazer, 430 F.3d at 707-08.

Petitioner agreed to the specific terms of his sentence and those terms were honored by the trial court during sentencing. Petitioner had no right to appeal as dictated by N.C.G.S. § 15A-1444. Because Petitioner had no right to appeal, counsel had no duty to inform him of a right to appeal, assuming, as Petitioner alleges, that counsel did not consult with him. However, even assuming that counsel did not inform Petitioner of any right to appeal and that such failure was deficient, Petitioner cannot establish any prejudice as he pled guilty, agreed to the exact sentence he received and had nothing to appeal per N.C.G.S. § 15A-1444. A reasonable

defendant in Petitioner's position would not have appealed under such circumstances. See Flores-Ortega, 528 U.S. at 486. Petitioner has not established prejudice in connection with his claim, so his claim fails..

Petitioner raised the substance of his various ineffective assistance of counsel claims in his MAR. (See. Doc. Nos. 10-5 at 2 and Doc. No. 14-2 at 3). Judge Collier summarily denied the MAR concluding that: "[t]he defendant has presented nothing in support of his motion other than his own speculative, self-serving and unsubstantiated allegations. The defendant has asserted no grounds, either in law or in equity, upon which his requested relief should be granted." (Doc. No. 10-7 at 2). This summary adjudication on the merits is correct. The adjudication is not contrary to, nor an unreasonable application of, the relevant Supreme Court law in Strickland. Furthermore, the adjudication is not based upon an unreasonable determination of the facts in light of the evidence presented in state court. Therefore, Petitioner's ineffective assistance of counsel claims are denied pursuant to § 2254(d) and (e).

**B.  Jail Credits**

Petitioner contends that his due process rights were violated because he did not receive the 627 days of jail-time credits to which he was entitled.[4] Petitioner also argues that his counsel was ineffective for failing to object to the calculation of his jail time credits.[5] In the State's brief

---

[4] Petitioner arrives at 627 days because he contends he spend 23 days in Iredell County Detention Center from when he was initially arrested on September 19, 2000 until October 21, 2000. He was arrested in France on March 9, 2005 and extradited back to the United States and housed once again at Iredell County Jail beginning on October 21, 2005 through his sentencing on November 2, 2006.

[5] The record establishes that at sentencing, counsel did argue for nineteen months jail credit for Petitioner. (Doc. No. 10-3 at 13-14). Petitioner received 388 days jail credit on his judgment. (Doc. No. 10-4 at 2). The record further reflects that following the entry of judgment, the court entered an Order giving Petitioner an additional 194 days jail credit for the

in support of its motion for summary judgment, the State initially argued that Petitioner did not object to the calculation of his jail-time credit at sentencing and therefore waived any challenge to his credits in this habeas proceeding. In its reply brief, the State noted that it appears that Petitioner's claim regarding the calculation of his jail credits is procedurally barred and that if he returns to state court to raise the claim in another MAR, the state court would find the claim barred by North Carolina's mandatory, and adequate and independent, procedural bar statute, N.C.G.S. § 15A-1419(a)(1), (a)(2), and (b). However, the State also concedes that with respect to the merits of Petitioner's claim, after "an extensive investigation" there appears to be 32 days of time Petitioner spent in jail but did not receive credit. (Doc. No. 14 at 6). The State notes that it would comply "if the Court determines that Petitioner should receive an additional 32 days jail-time credit." (Id. at 7).

With respect to the State's waiver argument, Petitioner's counsel did argue at his sentencing for nineteen months of jail-time credit. (Doc. No. 10-3 at 14). The Court gave Petitioner only 388 days of jail-credit on his Judgment and Commitment dated November 2, 2006. (Doc. No. 10-4 at 2). However, on December 29, 2006, perhaps in response to a motion filed by Petitioner's counsel, the Court entered an Order giving Petitioner an additional 194 days jail credit for the time he was in jail in France prior to being extradited back to the United States. (Doc. No. 14-3 at 2). Given this record, the Court cannot agree that Petitioner waived any challenge to his jail credit in this proceeding by failing to object to the court's calculation of his

---

time he was in jail in France prior to being extradited to Iredell County on September 19, 2005 (Doc. No. 14, Ex. 2) for a total of 582 days of jail credit, which is approximately the nineteen months argued by counsel at sentencing. (Doc. No. 14, Ex. 5). Petitioner has therefore not established that counsel was deficient. Further, in light of the fact that this Court is directing the State to recalculate Petitioner's jail credit to include 33 additional days, Petitioner cannot show prejudice.

jail-time credits in the state court.

Next, with respect to procedural default, prior to filing its reply brief, the State discovered that the MAR, dated October 23, 2007, that Petitioner attached as an exhibit to his habeas petition is different from the MAR, dated October 31, 2007, that the Assistant Attorney General obtained from the Clerk of the Iredell County, which she was told was the only MAR in the state court file. In light of this new information, the Attorney General argues that because Petitioner's claim regarding jail time credit and ineffective assistance of counsel regarding the same were not raised in the MAR filed in state court, but instead were raised for the first time in his petition for writ of certiorari in the North Carolina Court of Appeals, such claims are procedurally defaulted for the purposes of federal habeas review and that if Petitioner were to return to state court to raise the claim in another MAR, the state would find the claim barred by N.C.G.S. § 15A-1419(a)(1), (a)(2) and (b), North Carolina's mandatory and adequate and independent procedural bar statute. See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir.) (explaining that procedural default occurs when habeas petitioner fails to exhaust available state remedies and court to which petitioner would be required to present his claims in order to meet exhaustion requirements would now find claims procedurally barred), cert. denied, 523 U.S. 371 (1998).

In his habeas petition, Petitioner stated that he filed his MAR on October 23, 2007 and the State court denied his MAR on May 7, 2009. (Doc. No. 1 at 4). Petitioner attached a copy of his purported MAR to his habeas petition. (Doc. No. 1-3 at 8-31). Petitioner did not respond to the State's argument in its reply brief that the MAR he attached to his habeas petition and the MAR he actually filed in the state court were different. From this Court's review of the State court's MAR Order, this Court cannot determine which MAR the court ruled on in that the State

15

court did not specifically delineate Petitioner's claims nor did it note the date that Petitioner filed his MAR. (Doc. No. 10-7 at 2). Similarly, from a review of the Assistant District Attorney's response to the Petitioner's MAR, it is not clear which MAR the district attorney responded as he did not specifically delineate Petitioner's claims nor did he note the date Petitioner filed his MAR. (Doc. No. 10-6 at 2). The Court does not have uncontroverted evidence, in an admissible form, before it that Petitioner did not exhaust this claim, therefore the Court will not find that Petitioner's claim is procedurally barred and will consider the merits of his claim.

With respect to the merits of Petitioner's claim, the State does not contest Petitioner's calculation of 627 days except to the extent that the State argues that Petitioner only spent 11 days in Iredell County Jail in 2000 and not 23 days as Petitioner maintains. The States calculation of 11 days is supported by the record– Petitioner's Release Order indicates that he bonded out of jail on September 30, 2000. (Doc. No. 14-4 at 2). With that calculation change, the State argues that Petitioner spent 615 and not 627 days in jail but received credit for only 582 and concedes that after "an extensive investigation" there appears to be 32 days of time Petitioner spent in jail for which he did not receive credit, (Doc. No. 14 at 6), and that it would of course comply "if the Court determines that Petitioner should receive an additional 32 days jail-time credit." (Doc. No. 14 at 6-7). The State explains that Petitioner was initially credited with 388 days jail-time credit for the time he spent in Iredell County Jail until the date he was sentenced, which includes the 11 days Petitioner spent in Iredell County Jail from his arrest date until the date he bonded out of jail. In addition to that time, the Court, following the entry of judgment, entered an Order giving Petitioner an additional 194 days jail credit for the time he was in jail in France prior to being extradited to Iredell County on September 19, 2005 (Doc. No. 14-3: Order Providing Credit Against Service of Sentence) for a total of 582 days of jail credit.

(Doc. No. 14-6: N.C. Dept of Correction Printout showing credits given to Serrano). With this calculation, the State contends that there remains a 45-day disparity between the jail-time credit Petitioner claims and what he actually received. The disparity shrinks to 33 days with the State's explanation that Petitioner mistakenly believed that he spent 23 days in the Iredell County Detention Center, but that the record supports only 11 days in Iredell County jail from his arrest until posting bond. (Doc. No. 14, Exs. 3 and 4). The State contends that there remains 32 days[6] for which Petitioner did not receive jail credit and for which it cannot explain.[7] The State offers that "[a]pparently due to the change in personnel since Petitioner's prosecution, the [Assistant Attorney General] did not receive any definitive explanation for the disparity" and notes that "if the Court determines that Petitioner should receive an additional 32 days jail-time credit, Respondents will comply." (Doc. No. 14 at 6-7).

Because the State concedes that Petitioner has not been credited all of his jail-time, and that there are 33 (not 32) days missing that the State cannot explain, the Court is constrained to

---

[6] The State claims there are 32 days for which it cannot explain, but the Court calculates 33 days. Although Petitioner claims he is entitled to 627 days, the State explained that Petitioner mistakenly included 23 days in his calculation for the time he spend in Iredell County Jail when he was initially arrested instead of 11 days. Therefore, Petitioner's calculation must be reduced by 12 for a total of 615 days. The State and Petitioner agree that Petitioner received a total of 582 days of jail time credit. Therefore, the disparity between what Petitioner received and the amount of time he spent in jail is 33 not 32 days as the State contends.

[7] The State opines that "[p]erhaps the Superior Court, did, as Petitioner surmised in his petition for writ of certiorari submitted tot he North Carolina Court of Appeals, take into account the time, or some of the time, he would have spent serving his Wilkes County sentence for assault on a female. [] Or perhaps, Petitioner was not credited for any time spent in transporting him from France to Iredell County. This Court perceives the discrepancy to be attributed to the fact that when the State court calculated the additional 194 days for the time he spent in jail in France until he was extradited back to the United States, the court calculated the date Petitioner was extradited back as September 19, 2005 when, Petitioner's release order indicates that Petitioner was extradited back on October 21, 2005. (Doc. No. 14-3 at 2 and 14-4 at 2).

grant Petitioner the benefit of those 33 days of jail-time and direct that the State recompute his jail time to reflect a credit of 33 days and also recompute his release date in light of the additional 33 days of jail-credit.

C.     **Sentencing Issues**

In Petitioner's grounds three and four, Petitioner argues that his sentence was aggravated based upon findings of fact by the trial judge, not the jury, in violation of Blakely v. Washington, 542 U.S. 296 (2004)[8]; and that his due process rights were violated when the trial court ordered that he serve consecutive sentences.

These grounds for relief are without merit because, pursuant to his plea arrangement, Petitioner agreed to the exact sentence that he received, and he specifically stipulated to the finding of the aggravating factors. At his plea hearing, and pursuant to his plea arrangement, Petitioner stipulated to the existence of two aggravating factors: that he took advantage of a position of trust or confidence and that he was on pretrial release from the charges in Wilkes County at the time of the instant offense. (Doc. No. 10-3 at 7). Petitioner also stipulated that there is evidence to support these aggravating factors, and that the Court may accept these aggravating factors. (Id.). The State trial court concluded that Petitioner's guilty plea was his informed choice, made freely, voluntarily, and understandingly. (Doc. No. 10-3 at 14).

Petitioner raised the substance of these sentencing claims in the MAR and supporting affidavit and in his subsequently filed certiorari petition seeking to challenge the North Carolina Superior Court Order denying the MAR. The Superior Court denied Petitioner's MAR. (Doc.

---

[8] In Blakely, the Supreme Court held that facts that increase a sentence beyond the statutory maximum that were neither admitted by the defendant nor found by a jury, violate a defendants Sixth Amendment right to trial by jury.

No. 10, Ex. 6). The state court adjudication is correct and did not result in a decision contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States in <u>Blakely</u>. Nor is the state court adjudication based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. Therefore, the state court's adjudication will not be overturned under the deferential standards of review contained in section 2254(d) and (e).

## V. ORDER

**IT IS HEREBY ORDERED** that:

(1) Petitioner's § 2254 Motion (Doc. No. 1) is **GRANTED in part and DENIED in part**. With respect to Petitioner's claim regarding jail-time credits, the State is directed to recalculate Petitioner's release date with the additional 33 days of jail credit as explained in this Order.

(2) With respect to Petitioner's remaining claims, Respondent's Motion for Summary Judgment (Document No. 9) is **GRANTED**;

(3) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

**SO ORDERED**.

Signed: March 30, 2011

Robert J. Conrad, Jr.
Chief United States District Judge